**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                          No. CR 24-0568 JB

GERARDO ELEOCARDIO-REMIGO,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed June 25, 2024 (Doc. 36)("Memo."). The Court held a hearing on June 28, 2024. <u>See</u> Clerk's Minutes, filed June 28, 2024 (Doc. 37). The primary issue is whether the Court should sentence Defendant Gerardo Eleocardio-Remigo's illegal reentry conviction pursuant to: (i) 8 U.S.C. § 1326(b)(1), because Eleocardio-Remigo's prior North Carolina drug offense conviction does not constitute categorically an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. ("INA"), or (ii) pursuant to 8 U.S.C. § 1326(b)(2), because the North Carolina conviction constitutes categorically an aggravated felony under the INA. The Court concludes that -- using the categorial approach -- Eleocardio-Remigo's North Carolina conviction is categorically an aggravated felony conviction for the INA's purposes, so the Court will sentence Eleocardio-Remigo pursuant to subsection (b)(2) of 8 U.S.C. § 1326.

**<u>ANALYSIS</u>**

The Court will sentence Eleocardio-Remigo pursuant to 1326(b)(2), because, using the categorical approach, Eleocardio-Remigo's North Carolina drug offense conviction under N.C. Gen. Stat. Ann. § 90-95(a)(1), is an aggravated felony within the INA's meaning. On April 29, 2024, Eleocardio-Remigo pled guilty to one count of Reentry of a Removed Alien, contrary to

8 U.S.C. § 1326(a)(1) and (2), and 8 U.S.C. § 1326(b)(2).  <u>See</u> Presentence Investigation Report

¶ 2, at 3, filed May 17, 2024 (Doc. 33)("PSR").  The maximum statutory penalty for this offense

turns on whether the illegal reentry defendant has a prior felony or a prior aggravated felony:

> **(b)     Criminal penalties for reentry of certain removed aliens**
>
> Notwithstanding subsection (a), in the case of any alien described in such subsection --
>
> > (1)     whose removal was subsequent to a conviction for commission of . . . a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;
> >
> > (2)     whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both . . . .

8 U.S.C. § 1326(b).  The INA defines "aggravated felony" in part by reference to the Controlled

Substances Act and the federal criminal firearms statute, 18 U.S.C. § 924(c):

> **(43)**     The term "aggravated felony" means --
>
> . . .
>
> > **(B)**     illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18);
>
> . . .
>
> > **(U)**     an attempt or conspiracy to commit an offense described in this paragraph.

8 U.S.C. §§ 1101(a)(43)(B), (U).  Paragraph (B)'s reference to "drug trafficking crime," per

18 U.S.C. § 924(c), although a subset of paragraph (B)'s "illicit trafficking in a controlled

substance," is the salient reference for present purposes and is defined thus: "For purposes of this

subsection, the term 'drug trafficking crime' means any felony punishable under the Controlled

Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21

U.S.C. 951 et seq.), or chapter 705 of title 46."  18 U.S.C. § 924(c)(2).  <u>See</u> 21 U.S.C. § 802(13)

("The term 'felony' means any Federal or State offense classified by applicable Federal or State

law as a felony.").  21 U.S.C. § 841(a), the federal drug trafficking criminal statute, proscribes drug

trafficking conduct:

> **(a)    Unlawful acts**
>
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally --
>
> > (1)     to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
> >
> > (2)     to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a).  In turn, 21 U.S.C. § 841(b) lists the punishments applicable to trafficking of

different controlled substances; as relevant here, the penalties for trafficking cocaine are

mandatory minimums either of ten years or five years, depending on the quantity involved.  <u>See</u>

21 U.S.C. §§ 841(b)(1)(A)(ii)(I)-(II),  841(b)(1)(A)(iii) (ten year mandatory minimum, up to life);

21 U.S.C. §§ 841(b)(1)(B)(ii)(I)-(II), 841(b)(1)(B)(iii) (five year mandatory minimum, up to forty

years).

Eleocardio-Remigo's North Carolina conviction is for conspiracy to traffic cocaine, in

violation of N.C. Gen. Stat. § 90-95, which is a felony under State law.  <u>See</u> PSR ¶ 21, at 5 (listing

a 2013 "Conspiracy to Deliver Cocaine" conviction as an adult criminal conviction); Order on

Violation of Probation or on Motion to Modify at 3, filed June 28, 2024 (Doc. 38-1)("N.C.

Conviction")(indicating that Eleocardio-Remigo's 2013 arrest in case number 13CR214889 was

for violations of "NCGS 90-95(a)(1)," i.e., N.C. Gen. Stat. § 90-95(a)(1));[1] N.C. Conviction at 5 (representing the judgment imposed on Eleocardio-Remigo in the North Carolina case for "Conspiracy to Deliver Cocaine," which the judgment indicates is a Class H, Level I felony). The North Carolina statute, N.C. Gen. Stat. § 90-95(a)(1), proscribes cocaine trafficking activity, which is a felony in North Carolina:

> (a)    Except as authorized by this Article, it is unlawful for any person:
>
> > (1)    To manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance
> > . . . .
>
> (b)    Except as provided in subsections (h) and (i) of this section, any person who violates G.S. 90-95(a)(1) with respect to:
>
> > (1)    A controlled substance classified in Schedule I or II shall be punished as a Class H felon . . . .

N.C. Gen. Stat. §§ 90-95(a)(1), (b)(1). See N.C. Gen. Stat. § 90-90(1)(d) (listing cocaine as a Schedule II controlled substance).

Eleocardio-Remigo's § 90-95(a)(1) cocaine distribution conviction constitutes categorically an INA aggravated felony that the INA demands be sentenced under 8 U.S.C. § 1326(b)(2), and Eleocardio-Remigo's arguments to the contrary are unpersuasive. The Court uses the categorical approach to determine whether the North Carolina conviction triggers § 1326(b)(2)'s aggravated felonies provision. Cf. United States v. Reed, 48 F.4th 1082, 1089 (9th

---

[1]The CM/ECF filing Doc. 38-1 includes a variety of filings made in the underlying 2013 North Carolina criminal case. For example, the warrant executed in the case appears on pages 2 and 3 of that filing. Not all of the North Carolina filings that make up Doc. 38-1 are separately paginated. For ease of reference, the Court refers to the whole CM/ECF filing as "N.C. Conviction" and refers by the numbers according to CM/ECF, i.e., the page numbers appearing blue text at the top of the page.

Cir. 2022)("The categorical approach is a method to determine whether a conviction under a particular statute qualifies as a predicate offense under the definition of another statute.").  As the United States Court of Appeals for the Fourth Circuit explains, courts compare a State drug offense conviction to its federal counterpart to determine, for INA purposes, whether the State conviction represents one for illicit drug trafficking that triggers § 1326(b)(2)'s aggravated felony provision:

> To determine whether a state offense constitutes a drug trafficking crime or a crime relating to a controlled substance under the INA, we generally apply a categorical approach.  [Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015)]. Under this framework, we compare the federal definitions of "drug trafficking crime" and crime "relating to a controlled substance" to the elements of the relevant state offense.  *Id.*  If the elements of the state offense "correspond in substance to the elements" of the federal definition, without consideration of the individual's underlying conduct, the state conviction is a categorical "match" to the federal definition.  *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017)(citation, internal quotation marks, and brackets omitted).  However, when a state statute governs a "broader swath of conduct" than the federal definition, the state and federal definitions are not a categorical match.  [Descamps v. United States, 570 U.S. 254, 258 (2013)].

Cucalon v. Barr, 958 F.3d 245, 250 (4th Cir. 2020).

Although courts may not look to the facts underlying a prior conviction, they may glean additional details about the conviction that appear on the face of documents making up the conviction and judgment; for example, if a defendant's conviction is under a statutory provision that criminalizes trafficking controlled substances generally, courts may rely on documents relating to the conviction to identify what controlled substance specifically the defendant trafficked and what quantities were involved -- facts that affect the categorical analysis as to the State crime's federal counterpart.  See Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)("Moncrieffe")("[A] court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or 'some comparable judicial record of the factual basis for the plea.'" (quoting Nijhawan v.

Holder, 557 U.S., 29, 35 (2009)); Moncrieffe, 569 U.S. at 197-98 ("[O]ur 'more focused, categorical inquiry' is whether the record of conviction of the predicate offense necessarily establishes conduct that the CSA, on its own terms, makes punishable as a felony." (quoting Carachuri-Rosendo v. Holder, 560 U.S. 563, 580 (2010))).   Although, as noted, North Carolina treats Eleocardio-Remigo's cocaine conviction as a felony, see N.C. Gen. Stat. § 90-90(1)(d); id. § 90-95(b)(1), what matters for the INA's purposes is whether federal law treats as felonious the conduct that the State statute targets:

> [A] noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes.  A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law." *Lopez v. Gonzales,* 549 U.S. 47, 60. . . (2006).
>
> . . .
>
> [T]o satisfy the categorical approach, a state drug offense must meet two conditions: It must "necessarily" proscribe conduct that is an offense under the CSA, and the CSA must "necessarily" prescribe felony punishment for that conduct.

Moncrieffe, 569 U.S. at 188, 192.  The CSA treats some drug offenses as misdemeanors, which, therefore, do not constitute aggravated felonies for the INA's purposes.  Cf. Moncrieffe, 569 U.S. at 194-95 ("Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor.  Ambiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA. Under the categorical approach, then, Moncrieffe was not convicted of an aggravated felony." (source of quoted material not cited)).

Eleocardio-Remigo's argument is backwards that his conviction is not categorically an INA "aggravated felony" on the basis that 21 U.S.C. § 841(a)(1) does not require a sale of narcotics,

while one of N.C. Gen. Stat. § 90-95(a)(1)'s provisions requires sale.  He emphasizes that, among

other actions, the North Carolina statute requires the sale of narcotics.  See Memo. at 1-2 ("'[I]t is

unlawful for any person . . . [t]o manufacture, sell or deliver, or possess with intent to manufacture,

sell or deliver, a controlled substance.'  In light of the term 'sell' in the North Carolina statute, the

statute is clearly broader than the federal statute . . . under the categorical approach . . . ." (quoting

N.C. Gen. Stat. § 90-95(a)(1))(alterations the Court's)).   The federal statute does not contain an

explicit sale term, see 21 U.S.C. § 841(a)(1) ("[I]t shall be unlawful for any person knowingly or

intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture,

distribute, or dispense, a controlled substance . . . ."), and caselaw that Eleocardio-Remigo adduces

demonstrates that 21 U.S.C. § 841(a)(1) does not otherwise require sale, exchange of money, or

other remunerative characteristics.  See United States v. Fregoso, 60 F.3d 1314, 1325 (8th Cir.

1995)("21 U.S.C. § 841(a)(1) . . . makes it a crime to 'distribute' controlled substances . . . and

makes no mention of 'resale.'  No 'sale' is required to violate the statute. Brown 'distributed'

cocaine within the meaning of the statute when he freely gave cocaine to Cox and Cymbalista on

numerous occasions . . . ." (no citation given for quoted material)); United States v. Washington,

41 F.3d 917, 919 (4th Cir. 1994)("Distribution under 21 U.S.C. § 841(a)(1) is not limited to the

sale of controlled substances. . . . [I]n enacting the 1970 Act, Congress intended to proscribe a

range of conduct broader than the mere sale of narcotics. . . . Sharing drugs with another constitutes

'distribution' under § 841(a)(1)."  (no citation given for quoted material)); United States v. Coady,

809 F.2d 119, 124 (1st Cir. 1987)(Selya, J.)("21 U.S.C. § 841(a)(1) criminalizes "the actual,

constructive, or attempted transfer" of a controlled substance, 21 U.S.C. §§ 802(8), 802(11), as

opposed to its sale.  An exchange of money is not a required element of the offense. . . . [C]urrency

changing hands is not indispensable to a violation of § 841(a)(1) . . . .").  Eleocardio-Remigo thus

is correct that, although § 841(a)(1) does not require sale, § 90-95(a)(1) in some situations requires sale, but he misunderstands how that proposition cuts.  He maintains that the State sale-required rule is broader than the federal no-sale-required rule, see Memo. at 2-4, but the opposite is true: that North Carolina's law in part requires renumeration makes the North Carolina law narrower, not broader, than the federal law.  The "sell" term in N.C. Gen. Stat. § 90-95(a)(1) is a categorical match for -- and indeed a subset of -- 21 U.S.C. § 841(a)(1)'s "distribute" term.  Eleocardio-Remigo's North Carolina conviction does not fail, therefore, to constitute an aggravated felony for the INA's purposes for the sole reason that he advances.

The North Carolina statute does not fail for any other reason to constitute categorically an aggravated felony under the INA.  The other terms in N.C. Gen. Stat. § 90-95(a)(1) -- "manufacture, . . . deliver, or possess with intent to manufacture, sell or deliver, a controlled substance" -- also match categorically 18 U.S.C. § 841(a)(1)'s language.  Like North Carolina's § 90-95(a)(1), the federal § 841(a)(1) proscribes explicitly drug manufacturing, proscribes implicitly delivery, and proscribes explicitly possession with the intent to commit the primary action terms: "manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).  The federal terms "distribute" and "dispense" together cover effectively the same ground as the North Carolina "deliver" term.  Compare Distribute, Merriam-Webster, https://www.merriam-webster.com/dictionary/distribute (last visited August 14, 2024)("[T]o give out or deliver especially to members of a group . . . ."), and Dispense, Merriam-Webster, https://www.merriam-webster.com/dictionary/dispense (last visited August 14, 2024)("[T]o divide and share out according to a plan: to deal out in portions . . . . [T]o prepare and distribute (medication) . . . ."), with Deliver, Merriam-Webster, https://www.merriam-webster.com/dictionary/deliver (last visited August 14,

2024)("[T]o take and hand over to or leave for another: convey . . . ."). The North Carolina offense fits completely within the federal offense; no State offense conduct falls outside the federal offense definition.

Moreover, Eleocardio-Remigo's conviction is not a CSA misdemeanor and so does not fail to constitute an INA aggravated felony on that basis. Looking to his record of conviction, see Moncrieffe, 569 U.S. at 191 (2013)("[A] court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or 'some comparable judicial record of the factual basis for the plea.'" (quoting Nijhawan v. Holder, 557 U.S. at 35); Moncrieffe, 569 U.S. at 197-98 ("[O]ur 'more focused, categorical inquiry' is whether the record of conviction of the predicate offense necessarily establishes conduct that the CSA, on its own terms, makes punishable as a felony." (quoting Carachuri-Rosendo v. Holder, 560 U.S. 563, 580 (2010)), Eleocardio-Remigo's State crime involves cocaine distribution. See PSR ¶ 21, at 5 (listing a 2013 "Conspiracy to Deliver Cocaine" conviction as an adult criminal conviction); N.C. Conviction at 5 (representing the judgment imposed on Eleocardio-Remigo in the North Carolina case for "Conspiracy to Deliver Cocaine," which the judgment indicates is a Class H, Level I felony). This conviction is not for unremunerated distribution of small amounts of marijuana. See Moncrieffe, 569 U.S. at 194-95 ("[T]he fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more than a small amount of marijuana was involved. . . . Moncrieffe's conviction could correspond to either the CSA felony or the CSA misdemeanor."). Instead, the CSA treats categorically cocaine distribution as a felony. See 21 U.S.C. §§ 841(b)(1)(A)(ii)(I)-(II), 841(b)(1)(A)(iii) (ten year mandatory minimum, up to life); 21

U.S.C. §§ 841(b)(1)(B)(ii)(I)-(II), 841(b)(1)(B)(iii) (five year mandatory minimum, up to forty years).

In sum, Eleocardio-Remigo's North Carolina conviction under N.C. Gen. Stat. § 90-95(a)(1) constitutes categorically a CSA felony and therefore an aggravated felony under the INA. See 8 U.S.C. §§ 1101(a)(43)(B), (U).  The Court, therefore, sentences him under 8 U.S.C. § 1326(b)(2).

**IT IS ORDERED** that: (i) the Objection in Defendant's Sentencing Memorandum, filed June 25, 2024 (Doc. 36), is overruled; (ii)  the Court will sentence Eleocardio-Remigo pursuant to 8 U.S.C. § 1326(b)(2); and (iii) Eleocardio-Remigo's offense level is 2 and his criminal history category is I, resulting in a United States Sentencing Guidelines range of 0 to 6 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M. M. Uballez
   United States Attorney
Rumaldo R. Armijo
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Nicholas E. Mendoza
Nicholas Mendoza Attorney at Law
Tijeras, New Mexico

        *Attorney for the Defendant*